IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO RIVERS UNITED, and MORGAN and OLGA WRIGHT,<br><br>  Plaintiffs,<br><br>  v.<br><br>DISTRICT RANGER JOE HUDSON in his official capacity, and UNITED STATES FOREST SERVICE,<br><br>  Defendants.<br><br>IDAHO STATE BOARD OF LAND COMMISSIONERS, and IDAHO DEPARTMENT OF LANDS,<br><br>  Defendant-Intervenors | Case No. 3 15-CV-169-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for injunctive relief filed by plaintiffs. The motion is fully briefed on an expedited basis and at issue. For the reasons explained below, the Court will grant the motion.

## LITIGATION BACKGROUND

The State of Idaho is conducting logging operations on its land adjoining the Selway River. To facilitate the sale, the Forest Service is allowing the State to run its logging trucks over Forest Road 652. But that road runs through the private property of

plaintiffs Morgan and Olga Wright, who claim that the Forest Service violated its own regulations and an easement agreement when they opened the road to the logging trucks.

In this lawsuit, the Wrights, and Idaho River United, seek to enjoin the Forest Service from allowing the State to use Forest Road 652. The State has intervened as a defendant.

This lawsuit pits two adjoining landowners – the Wrights and the State – against each other, with the Forest Service in the middle. The Forest Service claims its decision to open Forest Road 652 to logging trucks is based on a 1937 easement over the Wright's property making the road a public highway. The Wrights counter by highlighting language in a later easement – signed in 1977 – that they allege excluded the public and conditioned the use of the road by the public. In addition, the Wrights allege that the Forest Service failed to follow their own regulations in declaring the road a public road. Meanwhile, the State is proceeding with a logging operation on its land, and claims that if the Wrights block their logging trucks from using Forest Road 652, even for a short time, they will suffer substantial damages.

When plaintiffs Morgan and Olga Wright purchased property adjoining the south side of the Selway River, they knew it was encumbered by two easements held by the Forest Service. The first is a 1937 easement for Forest Road 652, conveying a right-of-way along the road "for the construction, repair, maintenance, and operation of a . . . public highway." The easement further states that the land owners do "hereby dedicate the said right of way to the general public for all road and highway purposes provided for in the laws of the State of Idaho."

**Memorandum Decision & Order – page 2**

The road itself provides access for the Wrights and the State to their property. Running roughly north-south, the road, at its northern-most beginning point, intersects Forest Road 470 and then proceeds south for about 765 feet through the Wright's property and then into the adjoining parcel owned by the State of Idaho. It continues through the State's property and then through a privately-held parcel (the Ruby Neil property) and Nez Perce National Forest land before ending at Forest Trail #721. Its total length is about a mile-and-a-half.

The road is passable and open to traffic through its entire reach of 765 feet through the Wright's property to the State's property line. *See Hudson Affidavit (Dkt. No. 15-1)* at ¶¶ 8-10. The State wants to use that section of the road – that is, the 765 feet of road from its parcel through the Wright's land – for its logging trucks to transport logs from a timber salvage operation being conducted on the State's land. The Forest Service originally directed the State to submit an application for a special use permit to use the 765 feet of Forest Road 652. But later, after discovering the 1937 easement, the Forest Service declared the 765 feet of Forest Road 652 to be a public road for which no special use permit was required.

Under its agreement with the Forest Service, the State "will maintain the road in its current condition but will not improve, re-align, reconstruct or modify the road on the Forest Service easement." *Id.* at ¶ 10. Thus, it appears that the road through the Wright's property will not be widened or modified, and that no trees will be cut or trimmed along that stretch.

**Memorandum Decision & Order – page 3**

The Wright's property was also encumbered by a second easement signed in 1977 with the Forest Service. In the intervening forty years between the first and second encumbrances, the Selway River was included in both the Wilderness Preservation System and the Wild and Scenic River System. The latter protects a corridor along both sides of the Selway River from development. To implement that protection, the Forest Service issued a River Management Plan setting out the agency's plan to buy scenic easements along the corridor to ensure that development did not ruin the Selway River's protected status.

The Wright's property lies entirely within the protected corridor. Pursuant to the River Management Plan, the Forest Service entered into a scenic easement in 1977 with the Wright's predecessor. This 1977 easement – which applies to the Wright's entire property, including the road – contains a list of limitations on the Wrights' use of the property under the heading "Restrictions on Land Use by Grantor." These restrictions include a ban on mining and industrial activities, and restrictions on structures and development close to the river. At the end of the easement agreement is a new heading entitled "Public Entry" that states as follows:

> The [Forest Service] is hereby granted the right to permit the public use of the riverbank for fishing and traversing the river, but the public shall be excluded for any other purpose. Where needed, the [Forest Service] may erect appropriate signs indicating that portion of the easement area which is not open to public entry.

See 1977 Easement (Dkt. No. 7-4).

## LEGAL STANDARDS

To be entitled to injunctive relief, the plaintiffs must show each of the following: (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008)).

## ANALYSIS

### Jurisdiction

Defendants argue that the Court has no jurisdiction because the plaintiffs are challenging an agency's failure to act. The Court disagrees, and finds that plaintiffs have challenged a final agency action. The Forest Service made an initial determination that a special use permit was required but later, after discovering the 1937 easement, decided that no such permit was needed, and that Forest Road 652 was a public road. That is final agency action reviewable by this Court under § 706(2) of the APA.

### Injunction

The plaintiffs argue that they have satisfied all the elements to be entitled to injunctive relief. The first requirement – a likelihood of success on the merits – is satisfied they argue because the Forest Service made an arbitrary and capricious decision that (1) Forest Road 652 is a public road, and (2) the State did not need a special use permit. The Court agrees.

By statute, a public road must be "under the jurisdiction of and maintained by a public authority." *See* 23 U.S.C. § 101(a)(21). This appears to mean that the road must be maintained by the Forest Service and designated as a public road. Here, the record

Memorandum Decision & Order – page 5

shows that the section of the road that passes through the Wright's property has not been maintained by any public authority since a culvert was replaced in 1987. *See Hudson Affidavit, supra,* at ¶ 17. Instead, the Wrights have maintained the road at their own expense. *See Wright Declaration, supra,* at ¶ 13. Moreover, Forest Road 652 does not appear on any public notices or maps. *See Mullinix Declaration, supra* at ¶¶ 25-27.

      The Forest Service points to the 1937 easement as creating a public highway. But the statutory definition in § 101(a)(21), quoted above, still requires that the Forest Service designate the road as public and maintain the road. From the record as it exists now, it appears that was not done here. The 1937 easement essentially grants the Forest Service the unfettered right to use the right-of-way for road development as if it owned the property outright. But even if the right of way was over federal land, instead of the Wrights' property, the Forest Service would still be required to abide by the definition in § 101(a)(21) and require a special use permit before intensive use could be made of a road not falling within § 101(a)(21).

      Before it discovered the 1937 easement, the Forest Service required – and the State submitted an application for – a special use permit. The Forest Service was most likely correct in that decision, and the plaintiffs will likely be successful in arguing that the State must obtain a special use permit.

      Irreparable harm is likely if the injunction is not granted. The Wrights' property lies entirely within the Wild and Scenic River corridor, and the potential harms outlined in the record constitute irreparable injury within that corridor. *See Mullinix Declaration, supra* at ¶ 41 (describing potential for "massive sedimentation" and "debris flow" among

**Memorandum Decision & Order – page 6**

other threats to the Selway River). With regard to the balance of hardships, there will be delay in the timber salvage operation that will cause economic harm to the State. But the plaintiffs and the Court plan to move this case on an expedited fashion to mitigate any harm from delay. Moreover, it was only after this lawsuit was filed that the State auctioned and implemented the timber sale, and so it has to some extent created its own harm. *National Forest Preservation Group v. Butz,* 485 F.2d 408, 411 (9th Cir. 1973) (holding that party acts "at his peril" if, after being notified of the lawsuit, he proceeds with action sought to be enjoined). The Court therefore finds that the potential harm to the Selway River if the injunction is not granted outweighs the hardships caused by any delay to State. An injunction here would be in the public interest as it would recognize the protections for the Wild and Scenic River corridor.

The Court therefore finds that all the requirements for injunctive relief have been met. The Court will waive the filing of a bond. *Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1325 (9th Cir. 1985).

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for injunctive relief (docket no. 7) is GRANTED. The State Defendant-Intervenors are hereby enjoined from using Forest Road 652 for any purpose connected to the timber salvage sale. The Forest Service and District Ranger Joe Hudson are hereby enjoined from granting any permission to the State to use Forest Road 652 for any purpose connected to the timber salvage sale.

**Memorandum Decision & Order – page 7**

IT IS FURTHER ORDERED, that the parties shall contact the Court's Law Clerk Dave Metcalf (dave_metcalf@id.uscourts.gov) to establish an expedited schedule for resolution of this case.

DATED: July 10, 2015

*B. Lynn Winmill*
B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision & Order – page 8**