IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO RIVERS UNITED, and MORGAN and OLGA WRIGHT,<br><br>     Plaintiffs,<br><br>     v.<br><br>DISTRICT RANGER JOE HUDSON in his official capacity, and UNITED STATES FOREST SERVICE,<br><br>     Defendants.<br><br>IDAHO STATE BOARD OF LAND COMMISSIONERS, and IDAHO DEPARTMENT OF LANDS,<br><br>     Defendant-Intervenors | Case No. 3:15-CV-169-BLW<br><br>**MEMORANDUM DECISION** |

# INTRODUCTION

The Court has before it cross-motions for summary judgment and a motion to dissolve the injunction issued previously by the Court. The motions have been fully briefed and are at issue. For the reasons expressed below, the Court will (1) grant plaintiffs' request for declaratory relief; (2) dissolve the injunction issued earlier by the Court; and (3) deny the motions for summary judgment filed by the State and the Forest Service. The Court's decision is explained below.

# LITIGATION BACKGROUND

When this lawsuit began, the State of Idaho was conducting logging operations on its land adjoining the Selway River. To facilitate the sale, the Forest Service allowed the

**Memorandum Decision – page 1**

State to run its logging trucks over Forest Road 652. But that road runs through the private property of plaintiffs Morgan and Olga Wright, who claim that the Forest Service violated its own regulations and an easement agreement when they opened the road to the logging trucks.

In this lawsuit, the Wrights and Idaho Rivers United sought to enjoin the Forest Service from allowing the State to use Forest Road 652. The State has intervened as a defendant.

This lawsuit pits two adjoining landowners – the Wrights and the State – against each other, with the Forest Service in the middle. The Forest Service claims its decision to open Forest Road 652 to logging trucks is based on a 1937 easement over the Wright's property making the road a public highway. The Wrights counter that the Forest Service entirely failed to consider important matters in arriving at its decision, and they ask the Court to set aside that decision.

On July 10, 2015, the Court granted plaintiffs' motion for injunctive relief to enjoin the State from using Forest Road 652 for any purpose connected to the timber salvage sale. Among other grounds, the Court held that the property at issue was protected by the Wild and Scenic Rivers Act, and that an injunction would recognize the protections afforded by that Act. *See Memorandum Decision (Dkt. No. 19).*

Both sides have now filed motions for summary judgment, and the State has filed a motion to dissolve the injunction. The Court will resolve the motions after reviewing in more detail the factual background of this case.

## FACTUAL BACKGROUND

When plaintiffs Morgan and Olga Wright purchased property adjoining the south side of the Selway River, they knew it was encumbered by two easements. The first was signed in 1937 by the Wrights predecessors-in-interest who conveyed to the Forest Service a right-of-way along the road "for the construction, repair, maintenance, and operation of a . . . public highway." The easement further states that the land owners do "hereby dedicate the said right of way to the general public for all road and highway purposes provided for in the laws of the State of Idaho."

The road itself provides access for the Wrights and the State to their property. Running roughly north-south, the road, at its northern-most beginning point, intersects Forest Road 470 and then proceeds south for about 765 feet through the Wright's property and then into the adjoining parcel owned by the State of Idaho. It continues through the State's property and then through a privately-held parcel (the Ruby Neil property) and Nez Perce National Forest land before ending at Forest Trail #721. Its total length is about a mile-and-a-half.

The road is passable and open to traffic through its entire reach of 765 feet through the Wright's property to the State's property line. *See Hudson Affidavit (Dkt. No. 15-1)* at ¶¶ 8-10. The State wanted to use that section of the road – that is, the 765 feet of road from its parcel through the Wright's land – for its logging trucks to transport logs from a timber salvage operation being conducted on the State's land. The logging project would harvest 142 acres of trees and require over 1,000 logging truck trips to remove the logged timber.

The Forest Service originally directed the State to submit an application for a special use permit to use the 765 feet of Forest Road 652. But later, after discovering the 1937 easement, the Forest Service declared the 765 feet of Forest Road 652 to be a public road for which no special use permit was required.

Under its agreement with the Forest Service concerning the logging operation, the State "will maintain the road in its current condition but will not improve, re-align, reconstruct or modify the road on the Forest Service easement." *Id.* at ¶ 10. Thus, neither the Forest Service nor the State was going to widen or modify the road through the Wright's property.

The Wright's property was also encumbered by a second easement signed in 1977 with the Forest Service. In the intervening forty years between the first and second encumbrances, the Selway River was included in both the Wilderness Preservation System and the Wild and Scenic River System established by the Wild and Scenic Rivers Act. That Act protects a corridor along both sides of the Selway River from development. To implement that protection, the Forest Service issued a River Management Plan setting out the agency's plan to buy scenic easements along the corridor to ensure that development did not ruin the Selway River's protected status.

The Wright's property lies entirely within the protected corridor. Pursuant to the River Management Plan, the Forest Service entered into a scenic easement in 1977 with the Wright's predecessor. This 1977 easement – which applies to the Wright's entire property, including the road – contains a list of limitations on the use of the property under the heading "Restrictions on Land Use by Grantor." These restrictions include a

**Memorandum Decision – page 4**

ban on mining and industrial activities, and restrictions on structures and development close to the river. At the end of the easement agreement is a new heading entitled "Public Entry" that states as follows:

> The [Forest Service] is hereby granted the right to permit the public use of the riverbank for fishing and traversing the river, but the public shall be excluded for any other purpose. Where needed, the [Forest Service] may erect appropriate signs indicating that portion of the easement area which is not open to public entry.

*See 1977 Easement (Dkt. No. 7-4).*

## ANALYSIS

### Mootness

After this Court issued the preliminary injunction enjoining the State from using Forest Road 652 to haul logs, the State amended its plan to use helicopters to haul the logs. *See Groeschl Declaration (Dkt. No. 40-1).* The State's logging project is now complete. *Id.* This raises the question whether the dispute here is moot.

This Court lacks jurisdiction to hear moot claims. *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir.2008). A case becomes moot when it has "lost its character as a present, live controversy." *Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir.2011). The Wright's request for injunctive relief asking the Court to halt the travel of logging trucks over their property is moot because the logging project is finished and no additional logging by the State is currently under consideration.

However, even if a case is moot with respect to injunctive relief, a court may invoke jurisdiction over a claim for declaratory relief. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121–22 (1974). The Wrights seek a declaration overturning the District

**Memorandum Decision – page 5**

Ranger's decision that their road is a public road and that no special use permit was required before an intensive use could be made of the road like that proposed by the State.

The defendants bear the burden of showing that this request for declaratory relief is moot, and that burden is a heavy one. *In re Thorpe Insulation Co.*, 677 F.3d 869 (9th Cir.2012). A request for declaratory relief remains a live controversy when "the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire*, 416 U.S. at 122.

Both sides agree that the request for declaratory relief remains as a live controversy because the District Ranger's decision will have a continuing impact. Indeed, the record indicates that the State has planned some unspecified future activity on its parcel of property, *see Groeschl Declaration, supra* at ¶ 3, and the private owners of the Ruby Neil parcel appear to be planning a logging project. *See Notice of Activity (Dkt. No. 39)*. Under these circumstances, the Court agrees with the parties, and finds that although the request for injunctive relief is moot, the request for declaratory relief remains as a live controversy. The Court will therefore proceed to determine whether the District Ranger's decision was arbitrary or capricious under the legal standards discussed above.

**Review of District Ranger's Decision**

The Court's review of the determination by the District Ranger that Forest Road 652 is a public road and that no special use permit is required for an intensive use like

**Memorandum Decision – page 6**

that proposed by the State is governed by the Administrative Procedures Act (APA), 5 U.S.C. § 706(2)(A).  Under the APA, the reviewing court must set aside the agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

This standard is "deferential and narrow, establishing a high threshold for setting aside agency action."  *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1067, 1070 (9th Cir.2010).  A court must not substitute its judgment for that of the agency, but also must not "rubber-stamp" administrative decisions.  *Ariz. Cattle Growers' Ass'n v. FWS*, 273 F.3d 1229, 1236 (9th Cir.2001).  Instead, the court must presume the agency action to be valid and uphold it if a reasonable basis exists for the action.  *Nw. Ecosystem All. v. FWS*, 475 F.3d 1136, 1140 (9th Cir.2007).  Nevertheless, if the agency "entirely failed to consider an important aspect of the problem," the decision is arbitrary and capricious and must be set aside.  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Here, the District Ranger failed to consider two important aspects of the logging project's impacts in arriving at his decision:  (1) The logs would be hauled over a corridor protected by the Wild and Scenic Rivers Act; and (2) The road had been closed to commercial hauling pursuant to a Regional Order issued by the Forest Service.  The Court will consider each failure below.

Turning first to the Wild and Scenic Rivers Act, it is undisputed, as discussed above, that the Wright's property lies entirely within the Act's protected corridor.  The Act requires the Forest Service "to protect and enhance" wild and scenic values, and

**Memorandum Decision – page 7**

specifically requires that "[i]n such administration primary emphasis shall be given to protecting its esthetic, scenic, historic, archeologic, and scientific features." 16 U.S.C. § 1281. The Forest Service "shall take such action respecting management policies, regulations, contracts, plans, affecting such rivers . . . as may be necessary to protect such rivers in accordance with the purposes of this Act." 16 U.S.C. § 1283(a).

This language required the District Ranger to consider the effects of the State's intensive use of the road on the wild and scenic values set forth in the Act. It makes no difference whether the road runs over private property and is managed by the Forest Service pursuant to an easement or whether the road runs over Forest Service property. Either way, the Forest Service has duties under the Act that it cannot ignore simply by deeming the road to be "public" in nature. The State was proposing to operate a thousand logging truck trips over the road, and the District Ranger had a duty under the Act to consider whether this use was consistent with the wild and scenic values set forth in the Act. His failure to do so constituted a failure "to consider an important aspect of the problem" rendering the decision arbitrary and capricious. *Motor Vehicle Mfgs.,* 463 U.S. at 43.[1]

The District Ranger entirely failed to consider another important aspect of the problem. His decision rested in part on his erroneous finding that "[t]here are no traffic use restrictions or orders associated with these roads . . . ." *See Determination (Dkt. No.*

---

[1] The briefing contained a lengthy discussion of the 1977 easement and whether it imposed duties on the Forest Service or only imposed duties on the Wrights. The Court need not reach this issue because the Wild and Scenic Rivers Act imposes duties on the Forest Service regardless of the 1977 easement.

**Memorandum Decision – page 8**

*24-4)*.  In fact, it is undisputed that Forest Road 652 was subject to a Regional Order that prohibited "commercial hauling without a permit or written authorization from the Forest Service."  *See Regional Order (Dkt. No. 24-2)*.

The Forest Service argues that in granting written permission to the State to run its logging trucks over the road, the District Ranger was complying with the Regional Order's directive to grant "written authorization."  But it is clear from his determination that the District Ranger failed to consider the Regional Order and so cannot be said to have granted written authorization under that directive.  The Forest Service's argument here is just the sort of post hoc rationalization that the courts forbid.  *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973).

Moreover, the District Ranger also failed to consider the Forest Service's own guidelines on written authorizations.  Those guidelines suggest that a "written authorization" should be issued instead of a permit where the proposed commercial hauling operation "[i]nvolves a small number of trips," the costs of issuing a permit outweigh the value of potential cost recovery, and the "risks of road or resource damage involved in authorizing the commercial hauling by issuance of a letter are minimal."  *See Forest Service Manual § 7731.17 (AR 281, p. 19)*.  The State's proposed commercial hauling operation involved more than a "small amount of trips" and had the potential to affect wild and scenic resources, at least raising a serious question whether it could satisfy the test for a written authorization under this guideline.  Yet the guideline was not even considered by the District Ranger.

The Forest Service accurately points out that the Forest Service Manual "does not

**Memorandum Decision – page 9**

have the independent force and effect of law." *Sw.Ctr. for Biological Diversity v. U.S. Forest Service,* 100 F.3d 1443, 1450 (9th Cir. 1996). But the Wrights are not arguing – and the Court is not holding – that the Forest Service violated this provision of the Forest Service Manual, or that the Manual should dictate any particular result. Instead, the Court is holding that the District Ranger failed to even consider his own guidelines – failed to consider and either accept or reject the guidance provided by his own Forest Service Manual. And this failure was part and parcel of the larger failure to even consider the Regional Order. Those failures render his decision arbitrary and capricious under the APA.

The State argues that the Forest Service is required to provide the State with access to its property under the Alaska National Interest Lands Conservation Act (ANILCA). *See* 16 U.S.C. § 3210. ANILCA was passed to balance "the Forest Service's obligation to protect national forest interests [with] the interests of inholders seeking access to property surrounded by Forest Service land." *U.S. v. Jenks,* 22 F.3d 1513 (10th Cir. 1994). In this case, the State is not seeking access over Forest Service land, but is instead seeking access over land owned by the Wrights. ANILCA does not apply by its very terms to such a demand.

Even if the State could be deemed an inholder for ANILCA purposes, the Forest Service's own regulations require adherence to the Wild and Scenic Rivers Act before any access can be approved. *See* 36 C.F.R. § 251.114(f)(2). That regulation states that before the Forest Service can authorize any access under ANILCA, it "must . . . ensure that . . . the route is so located and constructed as to minimize adverse impacts on soils,

**Memorandum Decision – page 10**

fish and wildlife, scenic, cultural, threatened and endangered species, and other values of the Federal land." *See* 36 C.F.R. § 251.114(f)(2). This regulation required the Forest Service in this case to consider the Wild and Scenic Rivers Act before granting access under ANILCA. Because the District Ranger failed to do so, the Forest Service cannot use ANILCA to justify his decision.

## Conclusion

For all of these reasons, the Court declares arbitrary and capricious the District Ranger's decision of November 20, 2014, that Forest Road 652 is a public road for which no special use permit is required for an intensive project like that proposed by the State. Because the Court finds that the plaintiffs' request for injunctive relief is moot, the Court will grant in part and deny in part their motion for summary judgment. The Court will deny the motions for summary judgment filed by the Forest Service and the State.

In addition, the State filed a motion to dissolve the injunction issued earlier by the Court. Because that part of the case is now moot, the Court will grant this motion.

The Court's resolution of these motions resolves the entire case. The Court will therefore enter a separate Judgment as required by Rule 58(a).

DATED: March 28, 2016

B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision – page 11**